UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AGNIESZKA MAGDALENA ZAGAJA,

                         Plaintiff,                  Civil Action No. 20-12203

v.                                          Arthur J. Tarnow
                                          United States District Judge

COMMISSIONER OF
SOCIAL SECURITY,                  David R. Grand
                                          United States Magistrate Judge

                           Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 21)

Plaintiff Agnieszka Magdalena Zagaja ("Zagaja") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 17, 21), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Zagaja is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 21)** be **GRANTED**, Zagaja's Motion for Summary

Judgment **(ECF No. 17)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Zagaja was 36 years old at the time of her alleged onset date of September 28, 2016, and at 5'6" tall weighed approximately 160 pounds during the relevant time period.  (ECF No. 12-6, PageID.313, 317).  She completed high school but had no further education.  (ECF No. 12-2, PageID.134; ECF No. 12-6, PageID.318).  Over the years, she worked as a customer service representative for a telephone company and a home health care provider.  (ECF 12-2, PageID.134-136; ECF No. 12-6, PageID.318, 355).  Eventually, she stopped working on September 28, 2016, when she underwent surgery to repair a broken clavicle after suffering injuries in an ATV accident on September 3, 2016.  (ECF No. 12-2, PageID.136; ECF No. 12-6, PageID.317, 357).  She now alleges disability primarily as a result of syncope, headaches, fibromyalgia, muscle spasms, fatigue, dizziness, depression, and anxiety.  (ECF No. 12-2, PageID.99-103, 136-37, 140-42, 146, 156-57; ECF No. 12-6, PageID.317, 357).

After Zagaja's application for DIB was denied at the initial level on April 26, 2017 (ECF No. 12-4, PageID.183-86), she timely requested an administrative hearing, which was held on July 26, 2018, before ALJ Timothy Scallen.  (ECF No. 12-2, PageID.131-64).  Zagaja, who was represented by attorney Rufus Sadowski, testified at that hearing, as did vocational expert ("VE") Judith Findora.  (*Id.*).  At the close of that hearing, the ALJ determined that he wanted to obtain additional medical information; thus, after he did so,

2

ALJ Scallen held a second administrative hearing on June 20, 2019.  (*Id.*, PageID.92-130). At that hearing, Zagaja – represented by non-attorney representative Dannelly Smith – again testified, as did medical expert ("ME") James Washburn, D.O. and VE Scott Silver. (*Id.*).  On September 26, 2019, the ALJ issued a written decision finding that Zagaja is not disabled under the Act.  (ECF No. 12-2, PageID.68-85).  On June 11, 2020, the Appeals Council denied review.  (*Id.*, PageID.54-58).  Zagaja timely filed for judicial review of the final decision on August 17, 2020.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Zagaja's medical record, function and disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

3

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Zagaja is not disabled under the Act.  At Step One, the ALJ found that Zagaja has not engaged in substantial gainful activity since September 28, 2016 (the alleged onset date).  (ECF No. 12-2, PageID.70).  At Step Two, the ALJ found that she has the severe impairments of history of right clavicle fracture status post open reduction and internal fixation; malunion of right anterior process of calcaneus; traumatic arthropathy of the right ankle/foot; sleep

maintenance insomnia; delayed sleep phase syndrome; post-traumatic headaches; fibromyalgia; bilateral peripheral vestibular dysfunction; dysthymic disorder; major depressive disorder; post-traumatic stress disorder; and generalized anxiety disorder. (*Id.*; PageID.71). At Step Three, the ALJ found that Zagaja's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Zagaja's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: can occasionally climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently handle, reach, finger, and feel bilaterally; can frequently operate foot controls bilaterally; must avoid unprotected heights and moving machinery; must avoid concentrated exposure to excessive noise, light, vibrating tools, extreme temperatures, dusts, fumes, and gases; limited to simple, routine, and repetitive tasks; limited to a low stress environment, meaning minimal changes in the workplace in terms of work procedures and responsibilities; and can have only occasional contact with the public and supervisors. (*Id.*, PageID.72).

At Step Four, the ALJ found that Zagaja is not capable of performing any of her past relevant work. (*Id.*, PageID.83). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Zagaja is capable of performing the jobs of stuffer (383,000 jobs nationally) and pin or clip fastener (232,000 jobs). (*Id.*, PageID.84). As a result, the ALJ concluded that Zagaja is not disabled under the Act. (*Id.*, PageID.85).

C.     **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence …  is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.    Analysis**

In her motion, Zagaja raises only one argument – namely, that the ALJ's physical RFC determination is not supported by substantial evidence because he failed to properly weigh the opinion of her treating neurologist, Narayan Verma, M.D.   (ECF No. 17, PageID.1419-25).  For the reasons set forth below, the Court disagrees.

*1.    The Relevant Medical Evidence*[1]

On September 21, 2015, Zagaja presented to Abdallah Dlewati, M.D., reporting dizziness and fatigue.  (ECF No. 12-7, PageID.374)  She reported a history of near syncope for many years, which improved in her twenties, but had recently worsened to the point where she was losing consciousness every two to three weeks, accompanied by loss of

---

[1] Zagaja's medical record is lengthy, and the Court will not discuss each individual record in detail, particularly where the ALJ's discussion of this evidence is quite thorough.  Rather, the Court will focus on the medical evidence most critical to Zagaja's arguments.  In addition, because Zagaja's arguments pertain to the ALJ's evaluation of her physical impairments, the Court will focus its discussion on those impairments, rather than her mental impairments.

bowel control.  (*Id.*).  Dr. Dlewati noted that she had been evaluated by neurology (with a negative MRI of her brain); had a positive tilt test (with no treatment given); and diagnosed her with dizziness and other fatigue.  (*Id.*, PageID.374-75).

On September 28, 2016, Zagaja underwent surgery with Kevin Grant, M.D. for a right clavicle fracture she suffered after falling off an ATV on September 3, 2016.  (*Id.*, PageID.477-79).  Two months after surgery, Zagaja followed up with Dr. Grant, who observed that she was "doing very well"; as such, he advised nothing more than continuing with physical therapy.  (*Id.*, PageID.510-12).  Zagaja did not return to see Dr. Grant until February 2017, when he noted that, other than some residual soreness in her neck, she was doing "excellent."  (*Id.*, PageID.503-05).  Dr. Grant noted some decreased range of motion in the right clavicle when compared to the left, for which he recommended additional physical therapy.[2]  (*Id.*).  Zagaja saw Dr. Grant for the last time in mid-August 2017, at which time he opined that her "outcome is excellent" and she did not have any restrictions stemming from the right clavicle injury.  (*Id.*, PageID.561-63).

On April 5, 2017, Suezette Olaker, M.D. provided a consultative examination.  (*Id.*, PageID.546-52).  Dr. Olaker assessed near full strength in the extremities with full range of motion, strength, and sensation in her joints. (*Id.*, PageID.548).  Dr. Olaker also observed that Zagaja ambulated normally, carried/pushed/pulled eight to ten pounds, got on/off the examination table without difficulty, and performed bending, gross motor dexterity, finger-to-finger, finger-to-nose, and heel-to-shin normally.  (*Id.*, PageID.547-48).

---

[2] However, there is no indication in the record that Zagaja ever returned to physical therapy for her right clavicle.

On April 22, 2017, Zagaja presented to the emergency room, complaining of dizziness, as well as progressively worsening weakness, tremors, pain, tingling, and numbness in her bilateral upper and lower extremities.  (ECF No. 12-10, PageID.729-32). Clinically, she exhibited 2/5 hip flexion bilaterally, but the remainder of her diagnostic workup – including a CT of her head/brain – was completely unremarkable.[3]  (*Id.*, PageID.729-38).  On discharge, she ambulated independently.  (*Id.*, PageID.734).

On April 27, 2017, Zagaja presented to Narayan Verma, M.D. for an evaluation after her emergency room visit.  (ECF No. 12-12, PageID.986-87).  She indicated that she first felt nauseous, then her legs began to shake violently, and when the episode ended, she had severe muscle pain.  (*Id.*).  Dr. Verma's clinical findings were unremarkable, however. (*Id.*; PageID.987-88).  Nevertheless, he ordered an EEG to check for seizures and an EMG, both of which were normal.  (*Id.*, PageID.979-80, 985).  Zagaja continued to treat with Dr. Verma's office in May 2017, reporting muscle pain and weakness, but as the ALJ noted, aside from the identification of trigger points associated with fibromyalgia, "the remainder of her clinical examination was normal." (ECF No. 12-2, PageID.74; *see also* ECF No. 12-12, PageID.969-74).  Indeed, on May 31, 2017, Zagaja was in no acute distress and could move all of her extremities well with 5/5 strength and no proximal muscle weakness.  (*Id.*, PageID.969).  She had no difficulty rising from a seated position, no edema in the extremities, and her range of motion was symmetric in the extremities.  (*Id.*).  Moreover, Zagaja had intact sensation and reflexes, she could ambulate without difficulty, and she

---

[3] It was noted that an MRI of Zagaja's brain performed on March 15, 2017, showed scattered foci of non-specific chronic white matter change.  (ECF No. 12-10, PageID.730, 769).

had a negative Romberg sign. (*Id.*, PageID.970). Additional treatment records from Dr. Verma's office from 2017 and early 2018 note the same unremarkable clinical findings.[4] (*Id.*, PageID.957, 963, 991, 1022).

In March 2018, Zagaja consulted with rheumatologist Ashwini Shadakshari, M.D. for muscle and joint aches and pains. (ECF No. 12-8, PageID.578-81). Although Zagaja had some tenderness in the upper extremities, Dr. Shadakshari assessed normal range of motion, strength, and sensation throughout the spine and extremities. (*Id.*, PageID.580). X-rays of the spine and bilateral hips were normal as well. (*Id.*, PageID.582-83). Dr. Shadakshari assessed a diagnosis of fibromyalgia, for which he prescribed Flexeril. (*Id.*, PageID.578-81). Zagaja has not sought or received any further rheumatology-related treatment.

A few months later, Zagaja received treatment from Dr. Jaddou and Dr. Verma. (ECF No. 12-2, PageID.75). Although Zagaja complained of persistent pain in her low back, pelvis, hips, and shoulders, Dr. Jaddou's examination was normal. (*Id.*, ECF No. 12-13, PageID.1230). Similarly, at a visit to Dr. Verma in May 2018, he confirmed that, with the exception of positive fibromyalgia tender points, she moved all extremities well and maintained normal sensation, range of motion, and strength throughout all joints and muscles. (ECF No. 12-12, PageID.957-58). The same is true at several other visits to Dr. Verma through May 2019, where at each visit, Zagaja's clinical presentation remained

---

[4] Moreover, as the ALJ noted, Zagaja's primary care physician, Neil Jaddou, M.D. also documented normal clinical findings during this time period, including no leg weakness or swelling of the extremities and normal palpation in the lower extremities. (ECF 12-2, PageID.74; ECF No. 12-7, PageID.567).

largely unchanged.[5]  (ECF No. 12-13, PageID.1292, 1295, 1329, 1332, 1338, 1341).

> 2. *The ALJ's Evaluation of Dr. Verma's Opinion*

On June 19, 2019, Dr. Verma completed a Physical Residual Functional Capacity Questionnaire, in which he listed Zagaja's diagnoses as head injury, posttraumatic headaches, delayed sleep phase syndrome, attention deficit disorder, depression, left hemifacial spasms, and chronic pain syndrome.  (ECF No. 12-13, PageID.1389).  The clinical findings and objective signs he listed in support of these diagnoses were "18/18 tender points of fibromyalgia."  (*Id.*).  Dr. Verma opined that Zagaja's symptoms would frequently interfere with the attention and concentration needed to perform even simple work tasks; that she was incapable of even "low stress" jobs; that she can walk two city blocks without rest or severe pain, sit for a total of six hours in a work day, and stand/walk for less than two hours in a work day; that she needs a job that permits shifting positions at will from sitting, standing, or walking; that she needs unscheduled breaks hourly for five to ten minutes; that she can occasionally lift/carry less than ten pounds, rarely lift carry ten pounds, and never lift/carry twenty pounds; that she can occasionally look down, turn her head right or left, look up, and hold her head in a static position; that she can rarely twist, stoop, crouch, squat, climb ladders, and climb stairs; and will be absent from work as a result of her impairments or treatment more than four days per month.  (*Id.*, PageID.1390-

---

[5] At most, as the ALJ recognized, Dr. Verma occasionally documented a positive Romberg sign in late 2018 and early 2019.  (ECF 12-2, PageID.76; ECF 12-13, PageID.1292, 1295, 1329, 1332, 1335).  However, as the ALJ noted, despite assessing positive Romberg signs on these occasions, Zagaja's gait and coordination remained intact and she ambulated without difficulty.  (ECF 12-2, PageID.76; ECF 12-13, PageID.1292, 1295, 1329, 1332, 1335).

92).

In her motion, Zagaja argues that the ALJ's RFC determination is "unsupported by substantial evidence because he failed to properly weigh the opinion of treating physician Dr. Verma." (ECF No. 17, PageID.1419). The treating physician rule that applied at the time Zagaja filed her application[6] "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(c)(2)).

Here, the ALJ considered Dr. Verma's opinion, saying:

> The undersigned finds that Dr. Verma's opinion is only somewhat

---

[6] For claims (like Zagaja's) filed before March 27, 2017, the regulation applicable to weighing medical opinions is set forth in 20 C.F.R. § 404.1527. For claims filed on or after March 27, 2017, the applicable regulation is set forth at 20 C.F.R. § 404.1520c.

or partially persuasive.[7]   Overall, his conclusions regarding [Zagaja's] sitting, standing, walking and lifting limitations suggest that [she] could engage in sedentary work, which supports the above-delineated residual functional capacity.   However, there is minimal clinical or objective support for the doctor's opinion that [Zagaja] would need to shift positions at will, take frequent breaks, and miss more than four days of work per month.   As indicated above, the doctor's treatment records consistently indicate that his only positive finding was 18/18 tender points of fibromyalgia. Relatedly, clinical findings made by all treating and examining physicians have been relatively benign, i.e. nothing more than tenderness in the joints of her hands and feet.   Recently, Dr. Verma did note a positive Romberg, yet in spite of that, [Zagaja] consistently maintained normal range of motion, strength, and sensation throughout her entire musculoskeletal system. Additionally, she repeatedly demonstrated normal gait and coordination.   There is also no indication that she presented to Dr. Verma or any other physician as fatigued or lethargic, nor did she ever report significant difficulties performing her activities of daily living.   On that note, throughout the treatment records, no physician ever imposed restrictions on her ability to perform daily or work-related tasks.

(ECF No. 12-2, PageID.77 (footnote added)).   As set forth below, and as the evidence discussed above makes clear, the reasons articulated by the ALJ for discounting Dr. Verma's opinion find support in the record.

The ALJ reasonably discounted Dr. Verma's opinion based on a lack of

---

[7] As noted above, the Agency revised the regulations pertaining to the evaluation of medical opinion evidence, effective March 27, 2017.  *See* 20 C.F.R. § 404.1520c. Zagaja "point[s] out" that the ALJ found Dr. Verma's opinion to be only "somewhat or partially persuasive" (ECF No. 17, PageID.1421), and that the term "persuasive" applies in the revised regulations, which do not apply to Zagaja's claim, which was filed in October 2016. But, Zagaja ignores the fact that, at the outset of the decision, the ALJ explicitly stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," *i.e.*, the correct regulation.   (ECF No. 12-2, PageID.72).   Moreover, the ALJ later designated Zagaja's therapist as a non-acceptable medical source, consistent with the older version of the regulations.   (*Id.*, PageID.81).   Again, this suggests the ALJ was conscious of, and did, in fact, consider the proper regulations.   Finally, Zagaja fails to identify any prejudice from the ALJ's alleged reference to the revised regulations.

supportability and consistency with the record.  (*Id.*).  *See* 20 C.F.R. § 404.1527(c)(3), (4).

To begin with, the ALJ specifically explained that there is "minimal clinical or objective

support for the doctor's opinion that [Zagaja] would need to shift positions at will, take

frequent breaks, and miss more than four days of work per month."  (ECF No. 12-2,

PageID.77).  The ALJ then elaborated that Dr. Verma's treatment records consistently

indicate that his only positive finding was 18/18 tender points of fibromyalgia.  (*Id.*).  As

set forth above, this rationale is supported by substantial evidence.  (ECF No. 12-12,

PageID.987-88 (unremarkable clinical findings in April 2017), PageID.969-74 (Zagaja was

in no acute distress, could move all of her extremities well with 5/5 strength and no

proximal muscle weakness, no difficulty rising from a seated position, intact sensation and

reflexes, negative Romberg sign, and could ambulate without difficulty in May 2017),

PageID.957-58 (in May 2018, moved all extremities well and maintained normal sensation,

range of motion, and strength throughout all joints and muscles); ECF No. 12-13,

PageID.1292, 1295, 1329, 1332, 1338, 1341) (same at several other visits through May

2019)).  Thus, the ALJ's rationale was proper.  *See Price v. Comm'r of Soc. Sec.*, 342 F.

App'x 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not

supported by objective evidence or is inconsistent with the other medical evidence in the

record, this Court generally will uphold an ALJ's decision to discount that opinion."); *see*

*also Dockey v. Comm'r of Soc. Sec.*, No. 1:20-cv-153, 2021 WL 1206645, at *5 (W.D.

Mich. Mar. 31, 2021) (ALJ properly discounted treating physician opinion where it "lacked

support from both his own treatment notes and from other evidence in the record").

   Zagaja argues that the ALJ's decision to discount Dr. Verma's opinion as

14

inconsistent with his treatment records rests on a "very selective representation of Dr. Verma's copious amount of treatment notes." (ECF No. 17, PageID.1422). Specifically, Zagaja points to test results showing bilateral peripheral vestibular dysfunction, "positive Romberg test on multiple visits[,]" and observations from a physical therapist that Zagaja experienced dizziness from sit to stand and when turning. (*Id.*). But, the ALJ did not ignore these records. Rather, he recognized that Dr. Verma occasionally documented a positive Romberg sign in late 2018 and 2019 (ECF No. 12-2, PageID.76), yet noted that, at the same time, Zagaja maintained normal ambulation and coordination (*id.*). Similarly, the ALJ noted that, after Dr. Verma assessed bilateral peripheral vestibular dysfunction, Zagaja underwent vestibular therapy. (*Id.*, ECF No. 12-13, PageID.1334-35, 1338). And, while Zagaja displayed some stiffness during therapy, the ALJ explained that neither Dr. Jaddou nor Dr. Verma made such observations. (ECF No. 12-2, PageID.76 (citing ECF No. 12-13, PageID.1358, 1386-87)).

In short, the ALJ's thorough discussion of the medical evidence reflects a lack of clinical support for the more extreme limitations imposed by Dr. Verma, even considering the few positive Romberg tests of record and conflicting evidence of intact gait and coordination. Therefore, Zagaja's allegation that the ALJ "cherry picked" the record (ECF No. 17, PageID.1422) is without merit; rather, the ALJ properly and supportably resolved conflicts in the evidence. *See Albright v. Comm'r of Soc. Sec.*, No. 16-14100, 2018 WL 5094084, at *9 (E.D. Mich. Feb. 7, 2018) ("the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position") (internal quotations omitted).

The ALJ also discounted Dr. Verma's opinion because "clinical findings made by all treating and examining physicians have been relatively benign, i.e. nothing more than tenderness in the joints of her hands and feet." (ECF No. 12-2, PageID.77). Again, the ALJ's rationale in this respect finds support in the record. Zagaja underwent surgery for a right clavicle fracture in September 2016, but less than one year later, the surgeon opined that her "outcome [was] excellent" and she did not have any restrictions stemming from the right clavicle injury. (ECF No. 12-7, PageID.561-63). Similarly, consultative examiner Dr. Olaker assessed near full strength in the extremities with full range of motion, strength, and sensation in her joints. (ECF No. 12-7, PageID.548). Dr. Olaker also observed that Zagaja ambulated normally, carried/pushed/pulled eight to ten pounds, got on/off the examination table without difficulty, and performed bending, gross motor dexterity, finger-to-finger, finger-to-nose, and heel-to-shin normally. (*Id.*, PageID.547-48). Rheumatologist Dr. Shadakashari, who saw Zagaja in March 2018, assessed normal range of motion, strength, and sensation throughout the spine and extremities. (ECF No. 12-8, PageID.580). And, as the ALJ noted, Dr. Jaddou also documented normal clinical findings during this time period, including no leg weakness or swelling of the extremities and normal palpation in the lower extremities. (ECF 12-2, PageID.74; ECF No. 12-7, PageID.567). It was appropriate for the ALJ to discount Dr. Verma's opinion based on its lack of consistency with other treatment records.[8] *See Price*, 342 F. App'x at 175-76.

---

[8] Zagaja also briefly argues that a July 2018 mental impairment checkbox questionnaire completed by her counselor, Haithava Safo, LPC (ECF No. 12-12, PageID.1053-56) undermines the ALJ's evaluation of Dr. Verma's opinion. (ECF No. 17, PageID.1423-24). But, the fact that Mr. Safo also opined that Zagaja would likely be absent more than four days per month (ECF No. 12-12,

The ALJ articulated other reasons for discounting Dr. Verma's opinion, including that Zagaja never reported *significant* difficulties performing her activities of daily living. (ECF No. 12-2, PageID.77 (emphasis added)).  This is another proper reason to discount a medical opinion.  *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (explaining that an ALJ can discount an opinion on the grounds that it conflicts with the claimant's daily activities); *see also Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 899 (6th Cir. 2019) (same).  Here, Zagaja only complained of difficulty with activities of daily living requiring the rotation of her head (ECF No. 12-2, PageID.76; ECF No. 12-13, PageID.1387)[9], not *all* activities of daily living.  Indeed, the ALJ identified several activities that Zagaja was able to complete, such as watching television, shopping, and preparing meals.  (ECF No. 12-2, PageID.82-83).  Moreover, in her function report, Zagaja indicated that she can get her son ready for school, care for her dog, care for her own personal needs, and fold laundry.  (ECF No. 12-6, PageID.324-25).  Thus, the ALJ accurately noted that there were no significant complaints about Zagaja's ability to carry out daily activities when viewing the record as a whole.  (ECF No. 12-2, PageID.77).  As

---

PageID.1056) does not cure the deficiencies in Dr. Verma's opinion.  *See Hammer v. Comm'r of Soc. Sec.*, No. 13-10176, 2014 WL 1328190, at *2 n. 1 (E.D. Mich. Mar. 31, 2014) (each opinion must be evaluated on its own).  Moreover, Zagaja ignores the fact that Mr. Safo is not considered an acceptable medical source under the applicable regulations, so his opinion "[was] not entitled to any particular weight or deference[.]"  *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015) (internal citations omitted).

[9] Zagaja repeatedly cites to a note from her physical therapist indicating that, on January 22, 2019, she had "significant difficulty performing daily functions utilizing her back especially when head rotation/turning is involve[d]."  (ECF No. 17, PageID.1423; ECF No. 22, PageID.1462-63).  Again, however, the ALJ did not find that Zagaja *never* reported any difficulties with performing daily activities – only that there were no *significant* complaints of this nature when viewing the record as a whole.

the ALJ further explained, this is consistent with the lack of any evidence from providers limiting Zagaja's "ability to perform daily or work-related tasks." (*Id.*).

Finally, the ALJ discounted Dr. Verma's opinion because "[t]here is also no indication that [Zagaja] presented to Dr. Verma or any other physician as fatigued or lethargic ...." (*Id.*). Zagaja challenges this statement, asserting that the record "reveals multiple instances of observed fatigue[.]" (ECF No. 17, PageID.1423). But, most of Zagaja's examples are citations to her own self-reports. (*Id.* (citing ECF No. 12-8, PageID.578 (reporting diffuse muscle aches, joint pain, fatigue, dry mouth/dry eyes, and itchy skin without rash) and ECF No. 12-13, PageID.1294 (reporting feeling like "she wants to 'sleep all the time'"))). *See, e.g., McCready v. Comm'r of Soc. Sec.*, No. 10-13893, 2012 WL 1060088, at *8 (E.D. Mich. Mar. 2, 2012) (observations in "history of present illness" section "are merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions"); *see also Coleman v. Comm'r of Soc. Sec.*, No. 20-11568, 2021 WL 2560242, at *13 (E.D. Mich. June 7, 2021) (same).

With that said, Zagaja does identify a record that the ALJ apparently overlooked when finding no indication that she presented to Dr. Verma as fatigued or lethargic. (ECF No. 17, PageID.1423). Specifically, on one occasion, on June 1, 2017, Dr. Verma described Zagaja as "visibly depressed, low energy[.]" (ECF No. 12-12, PageID.968). But, the fact that the ALJ may have overlooked Zagaja's visual presentation of fatigue on one occasion over the course of several years of treatment is no more than "minor in nature and not substantial enough to change the outcome of the case" because it does not disturb

18

the other valid reasons articulated by the ALJ for discounting Dr. Verma's opinion. *Campbell v. Comm'r of Soc. Sec.*, 227 F. App'x 470, 471 (6th Cir. 2007). Contrary to Zagaja's assertion that "the ALJ did not provide a good reason to discount Dr. Verma's opinion" (ECF No. 22, PageID.1461), he provided several other good reasons – discussed above – which is sufficient. *See Brown v. Comm'r of Soc. Sec.*, No. 20-11082, 2021 WL 3853264, at *11 (E.D. Mich. Aug. 12, 2021) ("If an ALJ makes minor errors that do not affect the outcome of the case, a claimant is not entitled to remand.").

Moreover, elsewhere in the decision, the ALJ reasonably found that the record did not support the degree of fatigue alleged by Zagaja. At the hearing, she testified to fatigue due to medication side effects, necessitating frequent rest periods. (ECF No. 12-2, PageID.79, 138). However, the ALJ noted that Zagaja "consistently denied medication side effects and, in fact, repeatedly stated that she tolerated her medications just fine." (ECF No. 12-2, PageID.79; *see also* ECF No. 12-12, PageID.961; ECF No. 12-7, PageID.417). Therefore, the ALJ properly identified inconsistencies between Zagaja's complaints of fatigue and other record evidence, and Zagaja's claim that the ALJ "simply relied on the evidence that best supported his conclusion without proper explanation" (ECF No. 17, PageID.1423) is without merit. *See, e.g., Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) (where plaintiff testified she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contained no such reported side effects to her physicians).

To summarize, the ALJ's evaluation of Dr. Verma's opinion was proper. He

considered the supportability and consistency of the opinion with other evidence, explaining that a lack of clinical support significantly undercut the probative value of Dr. Verma's findings as to Zagaja's exertional limitations, as well as the need for a sit/stand option, for taking unscheduled breaks, and for absenteeism. The ALJ's lengthy and detailed discussion of Zagaja's treatment history, including regarding the specific benign findings recorded by Dr. Verma, amply support such an evaluation. The ALJ also reasonably explained that there was a lack of other supportive evidence for Dr. Verma's opinion, namely in Zagaja's ability to complete activities of daily living without significant difficulty. And, even considering the fact that the ALJ mistakenly asserted that there was *no* observed presentation of fatigue in the record, such an oversight does not disturb the remainder of the ALJ's analysis, especially since the ALJ supportably rejected Zagaja's claims of fatigue. Thus, the ALJ's evaluation of Dr. Verma's opinion withstands substantial evidence review, which is "not high." *Biestek*, 139 S. Ct. at 1154.[10]

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

---

[10] Zagaja also argues almost in passing that Dr. Verma "proffered limitations that are disabling" – namely, that she can stand and walk less than two hours in an eight-hour day and, thus, cannot perform sedentary work, which requires a total of two hours of standing and walking. (ECF No. 17, PageID.1424). But, Dr. Verma also opined that Zagaja can lift ten pounds rarely and less than ten pounds occasionally, which is consistent with the definition of sedentary work. *See Soc. Sec. Reg.* 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Here, although the ALJ found Zagaja slightly more capable than Dr. Verma did in terms of standing and walking, such a finding was reasonable in light of the ample evidence of intact physical findings (including normal gait, coordination, strength, and reflexes) discussed above. *See supra* at 7-11. *See`, e.g., Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 2218812, at *6 (E.D. Mich. Jan. 3, 2019) (finding that ALJ properly discounted an opinion that the claimant could not perform even sedentary work based on evidence of, among other things, full strength and "normal gait, good muscle strength, and normal range of motion").

Accordingly, that decision should be affirmed

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 21)** be **GRANTED**, Zagaja's Motion for Summary Judgment **(ECF No. 17)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: September 30, 2021          s/David R. Grand
Ann Arbor, Michigan                DAVID R. GRAND
                                   United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response

should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
